In the Matter of the Accounting of UNITED STATES TRUST COM-
PANY OF NEW YORK, as Surviving Trustee under the Will of
JAMES G. CLARK, Deceased.

Surrogate's Court, Richmond County, May 23, 1945.

*Stewart & Shearer* for United States Trust Company of New York, as surviving trustee, petitioner.

*E. Crosby Kindleberger* for Marjorie M. Haverstick, individually and as executrix of James Guyon Clark, deceased, respondent.

*Charles P. Robinson* for James Guyon Clark, Jr., respondent.

*A. B. Widdecombe* and *L. W. Widdecombe* for George A. Minasian, as executor of Frederick E. Clark, deceased, and another, respondents.

*Joseph J. Brophy* and *Desmond T. Barry* for Kathleen W. Lemery, legatee, respondent.

*C. Ernest Smith,* special guardian for Frederick D. Clark, infant, respondent.

BOYLAN, S. In this proceeding, the surviving trustee, upon an accounting, requests the construction of paragraphs "Eighth" and "Eleventh", respectively, of the will of James G. Clark, and a further construction of said will as to the devolution of title to certain real property mentioned and described in paragraphs "Second" and "Third" of said will.

Certain facts, for the purpose of this proceeding, have been stipulated between counsel as true. They are as follows:

At the time of the execution of his last will and testament, on May 10, 1907, James G. Clark, the decedent herein, was a well-known physician, residing in Staten Island, county of Richmond. The said decedent was then over eighty years of age, and was extremely fond of his son, Frederick E. Clark, who was also a physician.

The decedent was especially fond of his grandson, referred to in his last will and testament as "James G. Clark, Jr.," who, at the time of the making of said will of the decedent, was about thirty-one years of age, was married to a Miss Ethel Richmond and, as of that time, had no living children. The said James G. Clark, Jr., frequently visited his grandfather, the decedent, on Sundays and on other occasions when he was not working, and there was a strong mutual affection between them.

The said decedent did not see very much of his granddaughter, Kathleen W. Clark, or of his son William Milton Clark.

On February 3, 1910, Constance Clark, a daughter of James G. Clark, Jr., and his wife, Ethel Richmond, was born. Said child was approximately five years of age at the time of the death of the decedent, James G. Clark, on April 9, 1915. James G. Clark, Jr., married a second time. Marjorie M. Clark (Haverstick) was his second wife. Two sons were born of this union, namely James Guyon Clark and Frederick D. Clark.

It appears from the petition that the decedent, James G. Clark, was survived by his wife, Blanche A., his two sons, Frederick E. Clark and William Milton Clark, and by James G. Clark, Jr., and Kathleen W. Clark (now Lemery), his grandchildren, the children of his son, Frederick E. Clark. It further

appears that the widow of the decedent, Blanche A., never remarried.

Both sons predeceased the widow. Frederick E. Clark died testate on October 5, 1920, and William Milton Clark died testate on June 15, 1929. James G. Clark, Jr., grandson, died testate July 23, 1930, leaving him surviving his sons, James Guyon Clark and Frederick D. Clark, an infant under the age of fourteen years at the time of the filing of the petition herein.

Kathleen W. Clark, a granddaughter, whose married name is now Kathleen C. Lemery, was alive at the commencement of this proceeding.

The provisions of said will, which are the subject matter of this proceeding, are as follows:

" *Second:* I give to my wife, Blanche A. Clark, the use of the premises now occupied by me (usually called the Homestead), situated at the corner of Richmond Terrace and Taylor Street, in the First Ward of the Village of New Brighton, Staten Island, City of New York, bounded on the north by Richmond Terrace, on the west by Taylor Street, on the south by my property and Trinity Place, and on the east by property owned by Mrs. Thomas and Mr. McMurray. On this property are two dwellings, stable and outbuildings, and an outlet on the rear into Trinity Place. I also give to my said wife the use of all my furniture, pictures, silver, books, and (in a word) all things in my house, during her life, provided she remains my widow, and I direct my Executors and Trustees to regularly pay the water tax, and all taxes annually, the insurance, and for all necessary expenses and repairs on this property. At her death, or if she should marry again, I then give to my son, William Milton Clark, during his life, the use of the Homestead, and all the above mentioned property, and I direct my Trustees and Executors to pay all insurance, taxes and repairs during his life. If at any time my Trustees and Executors think it advisable and judicious to sell the Homestead property, with or without the furniture, I direct that the sum derived from such sale shall be invested, and the income therefrom be paid to my wife in regular quarterly payments, so long as she shall live, provided she remains my widow. At her death, or if she marries again, I then direct said income to be paid to my son, William Milton Clark, so long as he shall live, and at his death the principal from which said income is derived, together with any unpaid interest, shall be equally divided between my son, Frederick E. Clark, and my grandson, James G. Clark, Jr., upon the condition that they each pay to my granddaughter, Kathleen W. Clark, Two thousand dollars ($2,000) in cash.

"*Third:* At the death of my son, William Milton Clark, I give and devise the Homestead property, and all the property mentioned in paragraph second to my grandson, James G. Clark, Jr., in fee, (if said property has not been sold) upon the condition that he pay to my granddaughter, Kathleen W. Clark, Two thousand dollars ($2,000) in cash, and to my son, Frederick E. Clark, Two thousand dollars ($2,000) in cash.

\* \* \*

"*Eighth:* If my Executors and Trustees decide to sell the property on the north side of Richmond Terrace (described in the last paragraph), I direct that the sum derived from said sale shall be invested, and the income therefrom shall be paid to my wife Blanche during her life, provided she remains my widow. At her death, or if she marries, I direct the principal from which this income is derived to be equally divided between my son, Frederick E. Clark, my Son Milton, and my grandson, James G. Clark, Jr., upon the conditions that they each pay Five hundred dollars ($500) in cash to my granddaughter Kathleen.

\* \* \*

"*Eleventh:* All the rest of my estate, real and personal, not hereinbefore disposed of, I give and devise to my wife, Blanche A. Clark, and the United States Trust Company of New York, *In Trust, however,* to hold, manage and invest, to collect the income therefrom, and after deducting annually from said income a sum sufficient to pay the taxes, insurance, and for all necessary repairs on the Homestead property, and the Trustees' commissions, then the residue in regular quarterly payments to be made to my wife, Blanche A. Clark, so long as she shall live, provided she remains my widow. At her death, or if she should marry again, the income to her shall cease, and I then direct that this income shall be paid to my son Milton as long as he shall live, and at his death I direct that one-half of the principal yielding this income be paid to my grandson, James G. Clark, Jr., and the other half to be equally divided between my son, Frederick E. Clark, and his daughter Kathleen."

It further appears that the property mentioned in paragraphs "Second" and "Third" of said will has never been sold. Due to this fact, the directions contained in the second paragraph of said will do not require consideration. However, the language used therein does shed light on the feelings and intention of the testator toward the family of his son Frederick E. Clark, in that, after provisions for life estates to the testator's widow and his son William Milton Clark, the corpus of

said estate is to be divided between the testator's son and his grandson equally, subject to a charge in favor of Frederick E. Clark's daughter, Kathleen W. Clark (now Lemery), of $4,000. It also indicates an intention on the part of the testator, which is shown throughout the entire will, that Frederick E. Clark and his family be given the corpus or remainders of trust funds, as distinguished from mere life estates.

Under the provisions contained in the " Third " paragraph, the " Homestead " property, upon the death of testator's son William Milton Clark, is given and devised, together with certain personal property, to testator's grandson, James G. Clark, Jr., in fee, if the said property has not been sold, upon the condition that the said James G. Clark, Jr., pay the sum of $2,000 to testator's granddaughter, Kathleen W. Clark (now Lemery), and an equal sum to testator's son Frederick E. Clark.

The use of language such as employed by the testator in paragraph " Third " of his will, " At the death of my son, William Milton Clark, I give and devise the Homestead property * * * " clearly indicates an intention to devise a vested gift.

It has been held that where words or phrases indicative of time, are conjoined with words of present gift, these words or phrases relate merely to the time of enjoyment and not to the time of vesting. (*Connelly* v. *O'Brien,* 166 N. Y. 406, 408; *Hersee* v. *Simpson,* 154 N. Y. 496; *Bergmann* v. *Lord,* 194 N. Y. 70, 74.)

The statutory definition set forth in section 40 of the Real Property Law, relative to vested and contingent estates, is controlling in this case. That section reads as follows: " A future estate is either vested or contingent. It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates. It is contingent while the person to whom or the event on which it is limited to take effect remains uncertain."

In the case of *Moore* v. *Littel* (41 N. Y. 66, 80) the court, in interpreting this section, said: " * * * if you can point to a man, woman or child who, if the life estate should now cease, would, *eo instanti et ipso facto,* have an immediate right of possession, then the remainder is vested * * *."

Applying that test to the case at hand, under paragraph " Third ", James G. Clark, Jr., took a vested remainder subject to a charge in favor of Kathleen W. Clark (now Lemery) and Frederick E. Clark, of $2,000 each, because at any time after the death of the testator, James G. Clark, Jr., would instantly

have had an immediate right of possession in the event that the life estates provided for Blanche A. Clark and William Milton Clark had ceased.

In *Matter of Weaver* (253 App. Div. 24, 27), the Appellate Division said: " The words of the will denote an absolute gift. There is no direction to divide and pay over, no contingency of any kind. The mere postponement of the enjoyment of a portion of such residue did not prevent the vesting thereof.

" The law favors a vesting of estates and the same will be held to be vested at the death of the testator, unless the contrary direction is clearly expressed. (*Stokes* v. *Weston,* 142 N. Y. 433.)"

In *Matter of Weaver (supra)* HILL, P. J., wrote a concurring opinion, in which he said, at page 29: " *Matter of Crane* (164 N. Y. 71) ; *Matter of Baer* (147 id. 348) ; *Delafield* v. *Shipman* (103 id. 463) ; *Delaney* v. *McCormack* (88 id. 174) do not apply, as the words of gift speak *in præsenti* and not *in futuro* and are words of immediate purchase and not a direction to divide or pay at a future time. For reasons oft repeated, the law favors a construction whereunder an estate vests and unless a contrary intention is unequivocally and definitely expressed in the will, it will not be imputed. There is no presumption that the testator intended to create a contingent remainder. (*Matter of Chalmers,* 264 N. Y. 239; *Matter of Watson,* 262 id. 284; *Cammann* v. *Bailey,* 210 id. 19; *Connelly* v. *O'Brien,* 166 id. 406; *Hersee* v. *Simpson,* 154 id. 496; *Goebel* v. *Wolf,* 113 id. 405.)"

The Court of Appeals affirmed in 278 N. Y. 605, without opinion.

Accordingly I hold that upon the death of James G. Clark, Jr., this real property became part of his estate and, not being specifically devised in his last will and testament, became part of the residuary and is now owned by the residuary devisee, Marjorie Clark, now Marjorie Clark Haverstick, subject to a charge of $2,000 payable to Kathleen Clark Lemery and a further charge of $2,000 in favor of the estate of Frederick E. Clark, which sum I direct shall be paid to George A. Minasian, as sole surviving executor of the will of Frederick E. Clark, deceased, or his successor, to be disposed of by him in accordance with the provisions of the will of said Frederick E. Clark.

A construction of the " Eighth " and " Eleventh " paragraphs of the testator's will necessarily requires an examination of the " Seventh " paragraph of said will. They are as follows:

"*Seventh:* I give to my son, Frederick E. Clark, during his life, (unless my Executors and Trustees shall deem it advisable and judicious at any time to sell the property) the rents and benefits from all my property situated on the north side of Richmond Terrace (directly opposite the Homestead), in the First Ward of the Village of New Brighton, Staten Island, said property consisting of upland and land under water to the pier line, three houses, two bridges, and one pier. My said son shall pay all taxes and insurance, and shall keep all said property in good repair at his own expense.

"*Eighth:* If my Executors and Trustees decide to sell the property on the north side of Richmond Terrace (described in the last paragraph), I direct that the sum derived from said sale shall be invested, and the income therefrom shall be paid to my wife Blanche during her life, provided she remains my widow. At her death, or if she marries, I direct the principal from which this income is derived to be equally divided between my son, Frederick E. Clark, my son Milton, and my grandson, James G. Clark, Jr., upon the condition that they each pay Five Hundred Dollars ($500) in cash to my granddaughter Kathleen.

\* \* \*

"*Eleventh:* All the rest of my estate, real and personal, not hereinbefore disposed of, I give and devise to my wife, Blanche A. Clark, and the United States Trust Company of New York, In Trust, however, to hold, manage and invest, to collect the income therefrom, and after deducting annually from said income a sum sufficient to pay the taxes, insurance, and for all necessary repairs on the Homestead property, and the Trustees' commissions, then the residue in regular quarterly payments to be made to my wife, Blanche A. Clark, so long as she shall live, provided she remains my widow. At her death, or if she should marry again, the income to her shall cease, and I then direct that this income shall be paid to my son Milton as long as he shall live, and at his death I direct that one-half of the principal yielding this income be paid to my grandson, James G. Clark, Jr., and the other half to be equally divided between my son, Frederick E. Clark, and his daughter Kathleen."

Pursuant to the terms of the "Seventh" paragraph, the testator's son Frederick E. Clark was given a life estate of the premises situate on the north side of Richmond Terrace (directly opposite the Homestead) in the first ward of the village of New Brighton, Staten Island, said property consisting of upland and land under water to the pier line, three

houses, two bridges, and one pier. Paragraph "Seventh" also empowers the executors and trustees to sell the said property at any time, if they deem it advisable and judicious.

Paragraph "Eighth" then provides that if the executors and trustees should sell the said property, then the proceeds are to be invested and the income therefrom paid to the widow, Blanche, for her life, and upon her death it is provided that the principal shall be divided equally between the testator's sons, Frederick E. Clark and Milton, and his grandson, James G. Clark, Jr., upon condition that they each pay $500 in cash to the testator's granddaughter, Kathleen. Clearly the testator contemplated that such sale, if ever made, must be during the life of his son, Frederick, otherwise the division of the principal, as set forth in paragraph "Eighth", would be without benefit to him. In my opinion, the language empowering the executors and trustees to sell "at any time" means a sale at any time during the lifetime of the life tenant, Frederick E. Clark. Thus, the trust provided for in paragraph "Eighth" could only be set up out of proceeds of a sale occurring during the lifetime of Frederick E. Clark.

Because there is no other disposition of this property upon the death of said life tenant, it necessarily follows that upon his death this property became part of the residuary estate, to be disposed of in accordance with the provisions of paragraph "Eleventh" of the will. In my opinion, paragraph "Eighth" never became, and cannot become, operative because these premises were not sold during the lifetime of the life tenant, but were sold subsequent thereto.

In thus holding that the property which is the subject matter of disposition in paragraph "Eighth" becomes part of the residuary estate, to be disposed of in accordance with provisions of paragraph "Eleventh" of the will, no violation of the provisions of sections 42 and 43 of the Real Property Law occurs because the latter statute, providing that where a remainder is limited upon more than two successive life estates, the first two are valid and those subsequent are void, has no connection with the rule against the suspension of power of alienation and applies to life estates only and not to trusts. (*Matter of Dorn*, 167 Misc. 58, 62, affd. 255 App. Div. 973; *United States Trust Co.* v. *Webb*, 110 Misc. 683, and the cases cited therein; *Matter of Terwilligar*, 135 Misc. 170, affd. 230 App. Div. 763.)

Under and by virtue of paragraph "Eleventh" of the testator's will, James G. Clark, Jr., Frederick E. Clark and Kathleen

W. Clark (now Lemery) took a vested remainder because the direction to divide and pay to the beneficiaries was only used to let in prior estates, to wit, the trust estates for the benefit of the widow and his son Milton, and was therefore a postponement of enjoyment only, and not of vesting. In *Matter of Lamb* (182 App. Div. 180, 186, affd. 224 N. Y. 577) the court stated as follows: " There is brought to attention no instance where the direction was to pay at the death of the life beneficiary to a named adult person competent to take, and the gift was held not to vest at the testator's death, unless there were other evidence of such intention."

In the present case, the testator desired to die testate, as is evidenced by the fact that he executed the will. To hold that this gift was contingent, not vested, would result in a nullification of the testator's expressed intent to die testate by reason of the fact that the gift is in the residuary clause.

" If two interpretations of a will or of a specified portion thereof are possible, that interpretation is to be preferred which will avoid either a total or a partial intestacy." (Vosseler on Law of Wills, § 107.)

The Court of Appeals stated in *Waterman* v. *N. Y. Life Ins. & Trust Co.* (237 N. Y. 293, 300) : " There is a struggle always to avoid intestacy ".

This canon of construction is predicated upon the presumption that a testator, in executing a will, intends to dispose thereby of his entire property. (*Matter of Jaycox,* 233 App. Div. 67, affd. 258 N. Y. 587; *Matter of Rossiter,* 134 Misc. 837, affd. 229 App. Div. 730, affd. 254 N. Y. 583; *Matter of McGowan,* 134 Misc. 409, 411, affd. 228 App. Div. 779, affd. 254 N. Y. 513; *Matter of Hunt,* 207 App. Div. 127, affd. 237 N. Y. 613; *Matter of Weissmann,* 137 Misc. 113, 119, affd. 232 App. Div. 698; *Nicholas* v. *Farmers' Loan & Trust Co.,* 224 App. Div. 540; *West* v. *West,* 215 App. Div. 285, 287.)

In *Fulton Trust Co.* v. *Phillips* (218 N. Y. 573, 580) the court said: " Yet if the gift contained in the residuary clause was contingent, as claimed by the appellants, the testatrix must be held to have died intestate as to this portion of her residuary estate. If the gift had been out of the general estate the reason for believing that the testatrix intended it should be vested rather than contingent would not be as plain and cogent as where the gift is of the residuary estate itself." (Citing *Roosa* v. *Harrington,* 171 N. Y. 341; *Hersee* v. *Simpson,* 154 N. Y. 496, 502.)

The court also said at the same page (pp. 580–581): " The residuary clause contains a clear direction severing and setting apart a particular portion of the estate to be applied to the specific purpose declared in that clause. Such an explicit direction for severance of a particular portion of the estate is in harmony with an intent that the gift should vest rather than that it should be contingent." (Citing *Vanderpoel* v. *Loew et al.*, 112 N. Y. 167; *Steinway* v. *Steinway*, 163 N. Y. 183.)

In *Matter of Montgomery* (258 App. Div. 64, affd. 282 N. Y. 713) the court said:

"The designation of the three sons by name is an effective element in the determination of the intent of the testator that the remainder should vest in the sons on their survival of the testator." (P. 65.)

" While the language of the will is that the remainder ' shall be equally divided and paid to,' as distinguished from the words of direct gift, vesting is not thereby affected." (P. 65.) (*Moore* v. *Lyons*, 25 Wend. 119, 150; *Matter of Weaver*, 253 App. Div. 24, 27, affd. 278 N. Y. 605; *Matter of Banker*, 223 App. Div. 496, 501, affd. 248 N. Y. 596; *Roosa* v. *Harrington*, 171 N. Y. 341, 353; *Matter of Accounts of Mahan*, 98 N. Y. 372, 376.)

In the instant case it is to be particularly noted that the gift is made to designated beneficiaries. This is to be distinguished from the holding in *Matter of Crane* (164 N. Y. 71) in which case the gift was held to be to a class and not to designated beneficiaries. Moreover, the divide and pay over rule is never to be applied where to do so would violate the expressed intention of the testator.

Again, in *Matter of Watson* (262 N. Y. 284, 300) the court said: " The law favors the vesting of estates, and, unless a contrary intention is unequivocally expressed, it will not be imputed. (*Connelly* v. *O'Brien*, 166 N. Y. 406; *Hersee* v. *Simpson*, 154 N. Y. 496.)"

Accordingly, all of the property comprising the residuary, including the proceeds of the sale of premises mentioned in paragraph " Seventh " of the will of James G. Clark is now owned as follows: one half thereof by Marjorie Clark Haverstick, as residuary legatee under the last will and testament of James G. Clark, Jr., deceased; one quarter thereof by Kathleen Clark Lemery; and the remaining one quarter by George A. Minasian, as sole surviving executor of the estate of Frederick E. Clark, deceased, or his successor, and I direct payment to them accordingly.

Enter decree on notice in accordance herewith.